UNITED STATES DISTRICT COURT　　　　EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| JUSTIN CURRINGTON, § § Plaintiff, § § versus § § XTO ENERGY, INC. and SDS § PETROLEUM CONSULTANTS, LLC, § § Defendants. § | CIVIL ACTION NO. 1:12-CV-589 |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant XTO Energy, Inc.'s ("XTO") Motion for Summary Judgment (#87) and Defendant SDS Petroleum Consultants, LLC's ("SDS") Motion for Summary Judgment (#88) (collectively, "Defendants"). Defendants move for summary judgment as to Plaintiff Justin Currington's ("Currington") negligence claims. Having reviewed the pending motions, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment in favor of Defendants is warranted.

I.　　Background

This case arises out of an incident that occurred during the drilling of a gas well. XTO, a subsidiary of Exxon Mobil, is a leasehold interest owner in and the operator of an oil well identified as Longhorn No. 4H in the Haynesville Shale Field in San Augustine County, Texas. XTO retained Precision Drilling ("Precision") as an independent contractor to perform drilling operations on the well through a drilling bid proposal and contract. Pursuant to the terms of the contract, Precision furnished the equipment and labor and performed drilling services to drill the

well. XTO also contracted with SDS to provide a "company man" to represent XTO's interests at the drill site, Dewayne Pruitt ("Pruitt").

On February 13, 2012, while Currington was working as a floor-hand for Precision, various Precision employees, including Currington, were preparing to "nipple up" by installing a spool and drilling spool adaptor ("DSA") at the wellhead of the oil rig using a forklift. Currington was cleaning the wellhead at the request of his supervisor, Brandon Grayson, an employee of Precision, when the forklift operator, Justin Sewell, also a Precision employee, extended the boom of the forklift to position the DSA and spool over the wellhead. The forklift tilted forward, causing the DSA and spool to pin Currington to the wellhead. As a result, Currington suffered injuries that form the basis of this lawsuit. Pursuant to the terms of their contract with Precision, XTO provided the forklift, DSA, and spool that were involved in the accident. Pruitt was on site in his work trailer at the time Currington was injured.

On December 12, 2012, Currington filed suit in this court against XTO and SDS asserting negligence claims. Specifically, Currington alleges that XTO failed to provide a reasonably safe forklift and a DSA and spool that were labeled as to weight, and Pruitt failed to enforce safety rules on the job. On September 3 and September 5, 2014, Defendants filed their respective motions for summary judgment. XTO asserts that as a "property owner" under Chapter 95 of the Texas Civil Practice and Remedies Code ("Chapter 95"), it is afforded protection from civil liability. XTO contends alternatively that Currington's negligence claims fail because XTO owes no duty as a property owner to ensure that an independent contractor performs its work safely. SDS likewise argues that, as a contractor for XTO, it is protected from liability under Chapter 95

and, in any event, that it owed no duty of care to Currington, there is no evidence of a breach of duty, and SDS's conduct did not cause Currington's injuries.

II. Analysis

A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties seeking summary judgment bear the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Tiblier*, 743 F.3d at

3

1007 (quoting *Anderson*, 477 U.S. at 248); *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210.

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *Bayle*, 615 F.3d at 355. The court must "review the record 'taken as a whole.'" *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 273 (5th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (2012); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009).

Nevertheless, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008)

4

(citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Stearns Airport Equip. Co., Inc. v. FMC Corp.*, 170 F.3d 518, 528 (5th Cir. 1999) (quoting *Eastman Kodak Co.*, 504 U.S. at 468-69); *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012); *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006); *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). In such a situation, "'[a] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial' and 'mandates the entry of summary judgment' for the moving party." *United States*

5

*ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir.), *cert. denied*, 555 U.S. 1012 (2008) (quoting *Celotex Corp.*, 477 U.S. at 322-23).

B.   Chapter 95

1.   Overview

The liability of property owners for injuries to contractors and subcontractors is governed by Chapter 95 of the Texas Civil Practice and Remedies Code. Section 95.003 provides:

**§ 95.003.  Liability for Acts of Independent Contractors**

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE § 95.003.

Although enacted for the purpose of limiting a property owner's liability for deaths or injuries sustained by independent contractors while working on the premises, Chapter 95 did not entirely abrogate existing rules regarding premises owner liability. *Arsement v. Spinnaker Exploration Co.*, 400 F.3d 238, 245 (5th Cir. 2005); *Abutahoun v. Dow Chem. Co.*, No. 13-0175, 2015 WL 2147979, at *3 (Tex. May 8, 2015); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 699-700 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Rather, the first prong of

§ 95.003 is a codification of an earlier Texas Supreme Court decision adopting the stance taken by the Restatement of Torts regarding premises liability:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1965)); *see Abutahoun*, 2015 WL 2147979, at *7-8 & n.9. Indeed, language in § 95.003(1), specifying that the owner's right of control must be more than "the right to order the work to start or stop or to inspect progress or receive reports," was adopted verbatim from the Restatement. *See* RESTATEMENT (SECOND) OF TORTS § 414 at cmt. c. Because § 95.003(1) codifies well-established Texas common law, pre-1996 Texas independent contractor cases are, therefore, relevant when assessing what degree of control falls outside the scope of the statute's bar to liability.

In addition to adopting existing common law, Chapter 95 narrowed a plaintiff's ability to recover by incorporating a new "actual knowledge" requirement. *Ellwood Tex. Forge Corp.*, 214 S.W.3d at 700; *see Elmgren v. Ineos USA, LLC*, 431 S.W.3d 657, 665 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Thus, § 95.003(2) requires that a plaintiff adduce evidence that the defendant actually knew of the dangerous condition, not merely evidence that the defendant should have known about it, in order to overcome the statutory protection provided by Chapter 95. *See* TEX. CIV. PRAC. & REM. CODE § 95.003(2). "In other words, the burden now rests upon the plaintiff to show both (1) control *and* (2) actual knowledge of the danger. These

are two independent and necessary conditions to the imposition of liability." *Dyall*, 152 S.W.3d at 699. As the United States Court of Appeals for the Fifth Circuit explained:

> As does the common law, Chapter 95 provides that property owners are not liable for injuries to employees of independent contractors working on the owner's real property, or improvements to it, unless, first the property owner exercises "control over the manner in which the work is performed." Chapter 95 narrows the property owner's duty to an independent contractor, however, by further protecting the owner from liability unless he: second, has "*actual knowledge of the danger* . . . resulting in the personal injury"; and third, "fails to *adequately warn*" of that danger.

*Arsement*, 400 F.3d at 245. "An owner may be aware of the danger, but exercise no control, or he may exercise control and have no actual knowledge of the danger; in either instance, the owner is statutorily shielded from liability." *Ellwood Tex. Forge Corp.*, 214 S.W.3d at 700; *accord Elmgren*, 431 S.W.3d at 665; *Dyall*, 152 S.W.3d at 699.

### 2. Applicability

The defense has the initial burden of establishing that Chapter 95 applies to the case. *Gorman v. Meng*, 335 S.W.3d 797, 802 (Tex. App.—Dallas 2011, no pet.); *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Jones v. Apache Corp.*, No. G-05-499, 2007 WL 656268, at *2 (S.D. Tex. Feb. 27, 2007); *Moreno v. BP Am. Prod. Co.*, No. 04-08-00036-CV, 2008 WL 4172248, at *2 (Tex. App.—San Antonio Sept. 10, 2008, pet. denied). Once it is shown that Chapter 95 applies, however, the burden shifts to the plaintiff to show that the defendant is not protected from liability under § 95.003. *Rueda*, 178 S.W.3d at 111.

Section 95.002 of Chapter 95 contains the following provision regarding the statute's applicability:

**§ 95.002. Applicability**

This chapter applies only to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
>
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE § 95.002. Thus, two requirements must be met before an injured worker's civil suit for damages falls within the parameters of Chapter 95. First, the suit must be brought by and against a party specified in § 95.002(1); second, the claim must "arise from" an activity involving a modification or improvement to the property. *See Petri v. Kestrel Oil & Gas Props., L.P.*, 878 F. Supp. 2d 744, 770 (S.D. Tex. 2012); *Williamson v. Paccar, Inc.*, No. 4:06-CV-282, 2007 WL 2264720, at *3 (E.D. Tex. Aug. 6, 2007); *Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 131 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### a. Property Owner

When interpreting § 95.002(1), courts have held that Chapter 95 applies both to property owners "and also to their agents who oversee their properties." *Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 203 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *accord Jones*, 2007 WL 656268, at *4; *Abarca v. Scott Morgan Residential, Inc.*, 305 S.W.3d 110, 122 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A "[p]roperty owner," as defined in Chapter 95, is "a person or entity that owns real property primarily used for commercial or business purposes." TEX. CIV. PRAC. & REM. CODE § 95.001(3). The term "agent" has been used loosely by the courts and may, depending upon the specifics of the case, pertain to any person or entity "act[ing] on behalf of the owner in carrying out any duties required under the law." *Berry Prop.*

*Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 658 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.); *see Fisher*, 16 S.W.3d at 203. As a leasehold interest owner, XTO fits the definition of "property owner" for purposes of Chapter 95.[1] *See Mendoza v. Clingfost*, No. 12-08-00315, 2010 WL 827295, at *3 (Tex. App.—Tyler Mar. 10, 2010, no pet.) ("Ownership of a leasehold interest in real property satisfies [the definition set forth in § 95.001(3).]"); *Painter v. Momentum*, 271 S.W.3d 388, 397 (Tex. App.—El Paso 2008, pet. denied) ("By virtue of its ownership of the mineral interests relevant to the [well], [the defendant] is a property owner as defined by section 95.001."); *Chi Energy, Inc. v. Urias*, 156 S.W.3d 873, 879 (Tex. App.—El Paso 2005, pet. denied) (holding that Chapter 95 applies to an operator of a gas well); *accord Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 223-24 (5th Cir. 2013); *Petri*, 878 F. Supp. 2d at 771.

With regard to SDS, Currington asserts that because SDS is an independent contractor of XTO, the protections of Chapter 95 do not apply. The court agrees. Indeed, while Chapter 95 applies "only to a claim against a property owner, contractor, or subcontractor," § 95.003 expressly extends limited liability to only "property owners." *See* TEX. CIV. PRAC. & REM. CODE § 95.002; *Abutahoun*, 2015 WL 2147979, at *5 ("Despite identifying three potential defendants in the applicability provision of section 95.002, the Legislature limited *only a property owner's liability* in section 95.003.") (emphasis added); *Abarca*, 305 S.W.3d at 122; *accord Arsement*, 400 F.3d at 251 (recognizing that Chapter 95 "does *not* apply to general or independent contractors"). The contract between XTO and SDS repeatedly refers to SDS as "contractor" and, notably, paragraph XII states that "Contractor will be an independent contractor with respect to the Work,

---

[2] Currington concedes that XTO is a "property owner." *See* Docket No. 96-2 (Currington's Letter Br.).

and neither the Contractor nor any Subcontractor, or their respective officers or agents, will be deemed the agent, representative, employee or servant of XTO." *See* Docket No. 89-8 (Master Service Contract). Because SDS is an independent contractor and not a property owner or an agent of XTO, Chapter 95 does not apply to Currington's negligence claims against SDS. *See Abutahoun*, 2015 WL 2147979, at *5 ("[W]hen a claim is brought against a contractor or a subcontractor, section 95.003's limitation on liability does not apply and an independent contractor can recover for common law negligence.").

      b.  <u>Condition or Use of an Improvement to Real Property</u>

  Section 95.002(2) requires that the claim arise from "the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE § 95.002(2). This portion of the statute is satisfied so long as the contractor or subcontractor makes a modification, renovation, repair, or refurbishment to any permanent structure attached to the land. *See Francis v. Coastal Oil & Gas Co.*, 130 S.W.3d 76, 85 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *see also Sonnier v. Chisholm-Ryder Co., Inc.*, 909 S.W.2d 475, 479 (Tex. 1995) ("An improvement includes all additions to the freehold except for trade fixtures which can be removed without injury to the property."). Structures potentially within the scope of the statute encompass a variety of shapes, sizes, and functions. *See, e.g.*, *Petri*, 878 F. Supp. 2d at 771 ("Mineral wells like the 969 platform are 'improvements' to real property as a matter of law."); *Phillips*, 186 S.W.3d at 132 (scaffolding); *Francis*, 130 S.W.3d at 85 (mineral wells); *Fisher*, 16 S.W.3d at 201 (roof-mounted air conditioning units).

11

Moreover, "[c]ourts have held that chapter 95 applies, despite the fact that the object causing the injury is not itself an improvement, where the injury arises from work being done on an improvement." *Painter*, 271 S.W.3d at 397-99 (rejecting the argument that "claims arising from a drilling operation are not claims arising from the use and condition of an improvement to real property"); *see Admire v. H.E. Butt Grocery Co.*, No. 01-02-00060-CV, 2003 WL 203514, at *2 (Tex. App.—Houston [1st Dist.] Jan. 30, 2003, no pet.) ("Section 95.003 does not require that the defective part be the object of [the plaintiff's] work."); *Fisher*, 16 S.W.3d at 200-02; *see also Moreno*, 2008 WL 4172248, at *2 (finding Chapter 95 protection applicable where contractor's employee suffered injuries while unloading pipe at a well site); *accord Spears v. Crown Cent. Petroleum Corp.*, 133 F. App'x 129, 131 (5th Cir. 2005) (affirming summary judgment for defendant on the basis of Chapter 95 where plaintiff was injured after tripping on hoses while on premises to perform maintenance on a heat exchanger). Because Currington's injuries arose from his work in preparing to install a spool and DSA at the wellhead of the oil rig, his claims against XTO fall within the scope of § 95.002. Accordingly, XTO has met its burden to demonstrate the applicability of Chapter 95 to Currington's claims against XTO.[2]

---

[2] To the extent Currington challenges the applicability of Chapter 95 on the basis that this case involves negligent activity rather than a premises defect, his argument is unpersuasive. A "claim" is defined as "a claim for damages caused by negligence." TEX. CIV. PRAC. & REM. CODE § 95.001(1). The Texas Supreme Court recently held that "Chapter 95 applies to *all* independent contractor claims for damages caused by a property owner's negligence when the requirements of section 95.002(2) are satisfied." *Abutahoun*, 2015 WL 2147979, at *1, 5 (emphasis added). Moreover, the Court noted that "[t]he Legislature did not distinguish between negligence claims based on contemporaneous activity or otherwise, and neither shall we." *Id.*; *see Sinegal v. Ryan Marine Servs.*, 712 F. Supp. 2d 597, 602 (S.D. Tex. 2008) ("Chapter 95 applies to both premises defect claims and to negligent activity claims.").

3. Section 95.003

Pursuant to § 95.003, XTO cannot be held liable unless Currington shows that XTO exercised or retained some control over the manner in which the work was performed *and* had actual knowledge of the relevant danger or condition and failed to warn adequately. TEX. CIV. PRAC. & REM. CODE § 95.003. In this instance, Currington fails to do either.

a. Control

Control can be demonstrated either by an express contractual provision granting the power of control to the owner or by inference from the property owner's actual exercise of control. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999); *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 277 (Tex. App.—Beaumont 2014, no pet.). Contractual control is not implicated in this case, as the agreement between XTO and Precision provides that XTO engages Precision "as an independent contractor to drill the . . . well," but does not state that XTO retains the right to control the means, methods, or details of Precision's work in drilling the well.

With regard to actual control, although the ownership of property generally carries with it the right to control such property, this overarching principle does not address the type of control contemplated by Chapter 95—control over the "means, methods, or details" of an independent contractor's work. *Union Carbide Corp. v. Smith*, 313 S.W.3d 370, 375 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). As one federal court explained, "[t]he clear language of Section 95.003(1) indicates that the property owner must retain control over the plaintiff's *work*, not the object or improvement causing the alleged injury, in order to be held liable." *Williamson*, 2007

13

WL 2264720, at *4 (emphasis in original). "Generally, an owner or occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner." *Moritz*, 257 S.W.3d at 214; *Bastida v. Aznaran*, 444 S.W.3d 98, 107 (Tex. App.—Dallas 2014, no pet.). Moreover, "[i]t is not enough that the independent contractor's employees would have taken direction . . . if any had been offered." *Gaspard v. Dupont Dow Elastomers, L.L.C.*, 140 S.W.3d 415, 419 (Tex. App.—Beaumont 2004, no pet.); *see Koch Ref. Co.*, 11 S.W.3d at 156; *Ellwood Tex. Forge Corp.*, 214 S.W.3d at 701. As the Texas Supreme Court has plainly stated, "[a] possibility of control is not evidence of a 'right to control' actually retained or exercised" within the Chapter 95 framework. *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999); *City of Houston v. Ranjel*, 407 S.W.3d 880, 890 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *EPGT Tex. Pipeline*, *L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330, 336 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd).

Here, Currington has failed to adduce evidence sufficient to suggest that XTO exercised actual control over his work. Indeed, Currington testified at deposition that he never received instruction from Pruitt—who was onsite but not present on the rig when Currington was injured—or XTO about his work the day of the accident. In addition, Precision, rather than XTO, determined the manner in which the spool and DSA were to be placed on the wellhead. Further, according to XTO's Environmental Health and Safety Drilling Supervisor, Clark Dees ("Dees"), at no time did XTO instruct Precision with regard to the manner, means, methods, or details of Precision's work. For these reasons, the court finds that Currington has failed to raise a fact issue as to the type of control necessary under Chapter 95. Accordingly, summary judgment is warranted in favor of XTO on this basis.

### b. Knowledge

Chapter 95 also mandates that the owner have actual knowledge of the dangerous condition resulting in personal injury, death, or damage for liability to arise. TEX. CIV. PRAC. & REM. CODE § 95.003(2); *Pasadena Ref. Sys., Inc. v. McCraven*, 14-10-00837-CV, 2012 WL 1693697, at *6 (Tex. App.—Houston [14th Dist.] May 15, 2012, pet. dism'd); *Dyall*, 152 S.W.3d at 707 n.18 (citing *Bishop v. Nabisco, Inc.*, No. 14-03-00639-CV, 2004 WL 832916, at *3 (Tex. App.—Houston [14th Dist.] 2004, no pet.)); *accord Williamson*, 2007 WL 2264720, at *5. Indeed, the record is devoid of evidence suggesting that XTO actually knew of the alleged dangerous condition. To explain, the work at issue was the installation by Currington and other Precision employees of a DSA and a drilling spool to the wellhead. Both Dees and Pruitt stated that this task could have been accomplished in a number of different ways. Precision, rather than XTO or SDS, however, elected to bolt the two pieces of equipment and bring the assembly to the well head with the forklift, resulting in an overload of the forklift that tipped it forward and contributed to Currington's injury. Currington points to no evidence suggesting that XTO actually knew that Precision would proceed in this manner. *See* TEX. CIV. PRAC. & REM. CODE § 95.003(2); *Brocken v. Entergy Gulf States, Inc.*, 197 S.W.3d 429, 439 (Tex. App.—Beaumont 2006, no pet.) (recognizing that the dangerous condition known to the defendant must be the same dangerous condition that proximately caused the injury); *see also James v. Cousins Props. Tex., L.P.*, 03-06-00617-CV, 2008 WL 2220016, at *3 (Tex. App.—Austin May 30, 2008, no pet.) ("There must be evidence that the owner was aware of how the ladder, toilet, or other item was being used that created a dangerous condition.").

Moreover, it is unclear how the forklift, in and of itself, was a dangerous condition which would require a warning. *See Rueda*, 178 S.W.3d at 110 (noting, in a case where the plaintiff slipped on a ladder, that "a ladder is not a condition; a ladder may be in a condition, i.e., new, old, sturdy, unsteady"). As recognized by the court in *Rueda*, "it would be absurd to require a property owner to warn of a condition without some knowledge that the condition is dangerous." 178 S.W.3d at 109-10. In short, Currington fails to identify evidence suggesting that XTO was aware of a dangerous condition and, thus, summary judgment is appropriate for this alternative reason.

### C. Common Law Negligence

Having determined that Chapter 95 does not apply to Currington's claims against SDS, SDS alternatively moves for summary judgment as to Currington's common law negligence claims. In his Second Amended Complaint, Currington alleges that "[t]he company man, whether employed by XTO or SDS, failed to enforce safety on the job." As previously noted, SDS maintains that it is entitled to summary judgment because it owed no duty to Currington, there is no evidence of a breach of duty, and SDS's conduct did not cause Currington's injuries.

Under Texas law, a negligence claim consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. *Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 681 (5th Cir. 2014) (quoting *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)); *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 443 (5th Cir. 2010); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540-41 (5th Cir. 2005). "Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding

the occurrence in question." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999) (citing *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex. 1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994)); *see Boudreaux*, 402 F.3d at 541. If the defendant owed no duty, it cannot be found liable for negligence. *Boudreaux*, 402 F.3d at 542 n.19; *Thapar*, 994 S.W.2d at 637 (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.), *cert. denied*, 525 U.S. 1019 (1998)).

"Generally, a premises owner or general contractor does not have a duty to see that a subcontractor performs work in a safe manner." *Abarca*, 305 S.W.3d at 126; *see Koch Refining Co.*, 11 S.W.3d at 155 n.1 (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997)); *Stewart & Stevenson, LLC v. Foret*, No. 01-11-01032-CV, 2013 WL 4337319, at *7 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.). Nonetheless, "a limited duty arises if a general contractor retains control over a subcontractor's methods of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way." *Abarca*, 305 S.W.3d at 126 (citing *Koch Refining Co.*, 11 S.W.3d at 155); *Foret*, 2013 WL 4337319, at *7; *see Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (quoting *Redinger*, 689 S.W.2d at 418). As with Chapter 95, "[i]n determining whether [a contractor] has retained this right to control, the standard is narrow. The right to control must be more than a general right to order work to stop and start, or to inspect progress." *Coastal Marine Serv. of Tex., Inc.*, 988 S.W.2d at 226 (citing *Redinger*, 689 S.W.2d at 418); *see Abarca*, 305 S.W.3d at 124.

In *Mendez*, the Texas Supreme Court cited with approval the comments to § 414 of the Restatement (Second) of Torts, which state:

> [T]he employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed,

17

or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to the methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

967 S.W.2d at 356 (quoting § 414 cmt. c); *see Redinger*, 689 S.W.2d at 418 (applying § 414 where an employee of a plumbing subcontractor filed negligence claims against the general contractor and the dirt-hauling subcontractor); *see also Koch Refining Co.*, 11 S.W.3d at 155 n.1 (recognizing that a "general contractor owes the same duty as a premises owner to an independent contractor's employee" in a case involving a premises owner's duty to an independent contractor's employee); *Gonzalez v. VATR Construction LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.) (stating that "a general contractor owes the same duty as a premises owner to an independent contractor's employee" and applying this same law in a case involving subcontractors). The court went on to hold that the "duty of care is commensurate with the control it retains over the contractor's work" and that a general contractor's promotion of "general safety guidelines, and other safety precautions did not impose an unqualified duty of care." *Mendez*, 967 S.W.2d at 357-58; *see Petri*, 878 F. Supp. 2d at 778; *Moritz*, 257 S.W.3d at 214; *Abarca*, 305 S.W.3d at 126.

"The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner." *Coastal Marine Serv. of Tex., Inc.*, 988 S.W.2d at 226 (citing *Olivo*, 952 S.W.2d at 528; *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993); *Redinger*, 689 S.W.2d at 418); *accord Foret*, 2013 WL 4337319, at *8 (recognizing that the "control must relate to the injury that the negligence causes"). Indeed, "[g]eneral supervisory

control that does not relate to the activity causing the injury is not sufficient to create a duty." *Abarca*, 305 S.W.3d at 126 (citing *Perez v. Embree Const. Grp., Inc.*, 228 S.W.3d 875, 881 (Tex. App.—Austin 2007, pet. denied)). Nonetheless, one "who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent contractor employee a duty of reasonable care to protect him from work-related hazards." *Mendez*, 967 S.W.2d at 357.

As with XTO, SDS did not control the manner in which Currington and the other Precision employees conducted their work.[3] First, Currington fails to identify a specific contractual provision granting SDS authority to control the manner in which Precision conducted its work for XTO. Further, at deposition, Currington confirmed that he received no direct orders from Pruitt concerning the project and no instructions or other orders from Pruitt the day of the accident. Pruitt testified consistently, stating that he had no contractual or actual right to control any details associated with the "nippling up" operation. He also agreed that no one other than Precision had the authority to control those details. In short, the record indicates that SDS had no control over the manner in which Precision and Currington performed the aforementioned work. Accordingly, the court finds that SDS did not owe a duty to Currington to ensure that he performed his work in a safe manner. Thus, summary judgment in favor of SDS is warranted.

III. Conclusion

Consistent with the foregoing analysis, there is insufficient evidence in the record for a reasonable jury to infer that Defendants had the requisite control over the "means, methods, or

---

[3] Again, "[c]ontrol can be established in two ways: by (1) a contractual right of control or (2) an exercise of actual control." *Abarca*, 305 S.W.3d at 122 (citing *Ellwood Tex. Forge Corp.*, 214 S.W.3d at 700); *see Foret*, 2013 WL 4337319, at *8.

details" of Currington's work or that XTO had any knowledge of the danger. There remain no material facts in dispute, and Defendants are entitled to judgment as a matter of law. Accordingly, Defendants' motions for summary judgment are granted.

SIGNED at Beaumont, Texas, this 27th day of August, 2015.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE